E-FILED
Friday, 17 January, 2025 06:46:00 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 10

# FOLLOW UP INVESTIGATION REPORT

Case Heading: Helmbacher          Date of This Report: 8/28/98

Arrested: _____

It should be noted that at approximately 2320 hours this date I was notified at my residence by Lt. Anderson informing me that there had been a homicide at 351 West Macon #1. I responded to headquarters at that time.

Upon arrival at headquarters I was advised that the victim of the homicide was a William M. Helmbacher, W/M/30s. I was advised that witnesses had found Helmbacher lying just inside the door of his apartment at approximately 2315 hours on 8/27/98. I was also advised that the two witnesses who found Helmbacher had been brought to headquarters, their names being a Joseph Moyer and a Douglas Lee.

Officers were obtaining information from Douglas Lee at which time I stepped in the interview room and spoke briefly with Joseph Moyer.

INTERVIEW OF:   JOSEPH L. MOYER, W/M, 7/17/74, 865 WEST WOOD, 422-7023.

I explained to Moyer that I needed to get some very basic information from him so that I could pass it on to other detectives. Moyer advised me that he had known the victim for approximately four to five years and considered him a good friend. I asked Moyer to explain to me the circumstances leading up to the discovery of Helmbacher's body. Moyer advised me that he and Doug Lee (owner of 351 West Macon) had gone to 351 West Macon street to collect rent from the numerous apartments located at that address. Moyer advised that when he and Doug first arrived at the apartment building that they had first went to Helmbacher's residence just to stop by and speak with him. Moyer explained that Helmbacher is both a friend of Moyer's and Lee's. Moyer states that he and Lee knocked on the front door to Helmbacher's apartment and received no answer. Moyer and Lee thought this was odd as Helmbacher's vehicle was parked in front of the apartment complex and Moyer could see that there were a light on from within the apartment. Moyer advised that he looked in through the front window and could see a partially eaten hamburger and a pack of cigarettes sitting on a table inside the front room of Helmbacher's apartment but he could see no sign of Helmbacher himself. Moyer thought this to be odd since Helmbacher's car was there and his cigarettes and partially eaten meal were in view but they could not raise Helmbacher. Moyer advised that he and Lee decided to go ahead and collect rent from several tenants of the apartment complex. Moyer states that he and Lee did contact several tenants in approximately 30 to 45 minutes after first knocking on Helmbacher's door they returned and again knocked and again received no answer. Moyer advised that he and Lee had become very concerned over the fact that Helmbacher was not answering the door. Moyer then stated that "we forced our way into the apartment." I asked Moyer what he meant by forcing his way in asking him if he had caused any damage to the front door. Moyer then stated that they did not actually force entry and that Doug Lee opened the front door to the apartment with a key. Moyer states that soon after Lee unlocked the door they found Helmbacher's body laying just inside the front door.

Signed _____S. Chabak #572_____
Investigating Officer

# FOLLOW UP INVESTIGATION REPORT

Case Heading ___Helmbacher_____ Date of This Report ___8/28/98___

Arrested _____

I asked Moyer if Helmbacher's body was anyway blocking the front door entrance to which he stated no the front door after being unlocked opened freely and Helmbacher was just inside. I asked Moyer in what condition did he find Helmbacher's body to which he stated Helmbacher's body was face up and had a large amount of blood around his head area. Moyer states that he looked around and saw what he believed to be brain matter coming out of Helmbacher's head. Moyer advised that he also recalls seeing a hammer laying near Helmbacher's body. Helmbacher advised that he and Lee immediately backed out of the apartment and went to the neighbor's to call police. Moyer advised that he is actually the person who called police. Moyer advised that Lee continually asked Moyer to go back and help Helmbacher as he may not actually be dead. Moyer states that he knew what looking at Helmbacher's body that he was certainly dead. Moyer advised that he and Lee touched nothing in the apartment and only touched the outside handle of the door as they entered. Moyer insisted that neither he nor Lee touched Helmbacher's body.

I asked Moyer at what time on the evening of 8/27/98 did Doug Lee come over to pick him up. Moyer stated at first that Doug Lee came over to pick him up at approximately 9 p.m., picking him up at home at 385 West Wood. I explained to Lee that I thought he had told me he lived at 865 West Wood to which he stated that is true, he does not know why he came up with the 385 West Wood street explaining he just gets the numbers mixed up at times. Moyer then confirmed that Doug Lee came to his house at 865 West Wood to pick him up at either 8 or 9 p.m. on 8/27/98.

I asked Moyer what his relationship was with Helmbacher to which he simply stated again that he has known him for four to five years stating he had met him approximately one year before Moyer went off to prison, approximately five years ago.

Moyer's brief interview was terminated and detective Jason Walker resumed the interview of Joe Moyer. Detective Carlton was assigned the interview of Douglas Lee.

I then went to 351 West Macon #1 with detective Roger Ryan and detective Mike Gannon who were assigned to complete the crime scene work.

While at 351 West Macon #1, several other patrol officers were assigned to neighborhood canvasses. I briefly spoke with officer Wise who advised me that his recruit officer had interviewed subjects who live in the first building East of 351 West Macon, advised officers that approximately three days ago the victim Helmbacher had a verbal confrontation with the B/M who lived on the second floor to this apartment complex in the far-West end of the second floor. Officer Welker advised me that that would be Raymond Taylor. Welker explained that he had already spoken with Taylor and received very little cooperation from him.

Signed ___S. Chabak #572___
Investigating Officer

# FOLLOW UP INVESTIGATION REPORT

Case Heading ___Helmbacher_____ Date of This Report ___8/28/98___

Arrested _____

    Myself and officer Welker again went to Raymond Taylor's apartment and I made contact with Taylor. I explained to Taylor that I was investigating the homicide of Mr. Helmbacher in apartment #1, asking him if he had any information concerning the homicide to which he stated he had not seen Helmbacher today but did know him. I explained to Taylor that I understood that he may have had a confrontation with Helmbacher three days ago to which he totally denied. I asked Taylor for permission to enter his apartment and take a look around for any items that may have been taken from Helmbacher's residence during the homicide to which he first refused and then allowed me to look through is apartment. I did look through his apartment (this was just a very general search as I did not enter the drawers or cabinets of Taylor's apartment). I found no items of evidentiary value during the search of Taylor's apartment and thanked him for letting me in. Taylor advised me he knows nothing about the homicide. I explained to Taylor that I understood that he may had argued with the victim over a receipt for rental payment. Taylor advised me that he does not even pay rent for the apartment and that his father takes care of all that. Taylor states he believes his father makes checks out to Doug Lee who sometimes stays in an apartment at the complex also. I asked Raymond Taylor if he's ever been inside Helmbacher's apartment to which he states he has only stepped one foot inside the front door and that is all. Taylor even dramatized this by standing just inside his door and stating he went no further than this into Helmbacher's apartment (Taylor was standing approximately 2 feet inside his own apartment). I should be noted that a general visual check of Taylor revealed no fresh wounds or indication that he had recently been in a struggle. Taylor's interview was terminated.

    Detective Ryan and Gannon completed the crime scene work at 351 West Macon #1. The victim's vehicle was also towed and impounded. It should be noted that the victim's vehicle was parked legally in front of 351 West Macon. It should also be noted that Douglas Lee's vehicle was also parked in front of 351 West Macon; parked in a westbound position on the southside (eastbound) side of the street. I spoke briefly with detective Carlton over the radio (who was at headquarters) who had passed on information to me concerning Douglas Lee's car. It was my understanding that detectives working the case at headquarters were for some reason going to obtain a search warrant for Douglas Lee's car and it was to be towed and impounded also. I did instruct patrol officers to tow the vehicle and place it in the impound bay as detectives at headquarters were attempting to obtain a search warrant for it. It was later learned that this was a misunderstanding, a search warrant was not obtained although the car was towed.

Signed _____S. Chabak 4572_____
Investigating Officer

# FOLLOW UP INVESTIGATION REPORT

Case Heading: Helmbacher                                    Date of This Report: 8/28/98

Arrested: _____

It should also be noted that while detectives Ryan and Gannon and myself were inside apartment #1 of 351 West Macon it was brought to our attention that officer Jeremy Welker had taken a residential burglary report from William Helmbacher at 2334 hours on Wednesday 8/26/98. That burglary taking place between 6:30 p.m. to 11:15 p.m. on that date. A Eastern Illinois University glass mug containing assorted change and five Ice House brand unopened beer bottles were taken from the apartment in that burglary.
It should also be noted that there was no forced entry in that burglary and infact Helmbacher had found that his front door was still locked when he returned to his house on that evening. That report is number #98-45285. Because of this previous burglary we requested that officer Welker take a walk through the crime scene to determine what items he could verify were definitely different from when he was there 24 hours prior on the above mentioned burglary. Welker made a walk-through of this crime scene on this date and advised that the kitchen cabinets which on today's date appeared to be all ajar was not that way on 8/26/98. Welker also advised that it appears that the cushions on both couches in the front room which were now in a total disarray were not that way on 8/26/98. Welker advised that the partially eaten hamburger sitting out on the counter was not present on 8/26/98. Welker verified that in the victim's bedroom, the bedroom looked similar to what it looked like on the evening on 8/26/98 stating that there were clothes and books laying around, as there were this date, but the bed had been pulled out by the suspected burglar on the evening of 8/26/98 and the bed was now placed back in the corner of the room. Welker also indicated that the victim was very concerned about a black leather coat during the 8/26/98 burglary. Welker had explained to me that Helmbacher had worried that his leather coat may have been taken but after checking the closet just inside the front door he learned that it was not taken on the 8/26/98 burglary. It should be noted that the black leather jacket was still in that particular closet as of today's date.

After detectives were through working the crime scene and both above-mentioned vehicles were towed, the crime was secured at 0345 hours, 08/28/98.

Signed: S. Chabak 4572
Investigating Officer