**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| CHARLES PALMER, | ) | |
| | ) | Case No. 3:17-cv-03268 |
| Plaintiff, | ) | |
| | ) | Hon. Colin Stirling Bruce |
| v. | ) | |
| | ) | Hon. Eric I. Long |
| CITY OF DECATUR et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANTS RYAN AND
MORVILLE'S MOTIONS *IN LIMINE***

Jon Loevy
Steven Art
Rachel Brady
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900
brady@loevy.com

# TABLE OF CONTENTS

PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANTS RYAN
AND MORVILLE'S MOTIONS *IN LIMINE* ...................................................................1

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 1 ..........................3

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 ..........................5

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 3 ........................17

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 ........................20

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
*IN LIMINE* NO. 5 .............................................................................................24

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
*IN LIMINE* NO. 6 .............................................................................................29

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 7 ................................................................................33

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 8 ................................................................................37

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 9 ........................40

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 10 ..............................................................................41

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 11 ..............................................................................46

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 12 ......................48

**PLAINTIFF'S RESPONSES IN OPPOSITION**
**TO DEFENDANTS RYAN AND MORVILLE'S MOTIONS *IN LIMINE***

Plaintiff Charles Palmer, through his attorneys, Loevy & Loevy, respectfully responds in opposition to Defendants Roger Ryan and Roger Morville's motions *in limine* (Dkt. 292), stating as follows:

## INTRODUCTORY STATEMENT

As a threshold matter, Defendants argue throughout their motions *in limine* as if only one claim—due process fabrication—remained in this case for trial. That approach ignores this Court's summary judgment ruling, which states in clear terms that claims remain for trial against Defendants Carlton (Waks), Morville, and Ryan for federal due process fabrication, federal unlawful detention in violation of the Fourth Amendment, federal failure to intervene, federal conspiracy, state-law malicious prosecution, state-law intentional infliction of emotional distress, and state-law civil conspiracy, and against Defendant Decatur for state-law *respondeat superior* and state-law indemnification. Dkt. 210 at 114. As a result, when Defendants assert (without development) that evidence is not relevant to Plaintiff's due process fabrication claim (a point they are often wrong about on the merits), they ignore every single other claim that survived summary judgment and that is about to be tried in this case.

This is a reason to summarily deny Defendants' motions *in limine*. "[A] motion in limine should be granted only if the evidence sought to be excluded is clearly inadmissible *for any purpose.*" *Noble v. Sheahan*, 116 F. Supp. 2d 966, 969 (N.D. Ill. 2000) (emphasis added). Defendants have failed to so much as argue that items of evidence are irrelevant to all of the claims and theories in the case. In this way they have failed to satisfy their burden.

To the extent that the Court chooses to address Defendants' motions *in limine* on the merits, it is critical to clarify that the claims remaining in the case are those set out in the Court's

1

summary judgment order, not merely the due process fabrication claim on which Defendants focus. Much of the disputed evidence is relevant to both that due process fabrication and the other claims of liability and claims for damages, which Defendants nowhere discuss.

In addition, Defendants end the bulk of their motions with a rote, conclusory statement that the evidence they seek to exclude is "prejudicial" (Motions *in Limine* 2-5, 8, 9, 12) or will "confuse the jury" (Motions *in Limine* 1- 5, 8, 9, 12). These blanket statements are undeveloped and this Court should not consider them. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *see also Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir.1998) ("This court has refused to consider unsupported or cursory arguments."); *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Radke's Inc. v. Bastian*, No. 09-01258, 2011 WL 811377, at *1 (C.D. Ill. Mar. 2, 2011) (noting that perfunctory and undeveloped argument do not merit consideration by the court).

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 1**

Defendants ask the Court to exclude inadmissible hearsay contained in police report, without identifying any particular inadmissible hearsay or any specific police report they would like excluded. *See* Dkt. 292 at 1-2. Plaintiff has no quarrel with the basic proposition that inadmissible hearsay not meeting an exception should not be admitted into evidence—that is what the hearsay rules require. Fed. R. Evid. 801-804. To the extent that Defendants are asking the Court to enter an order *in limine* declaring that it will enforce the hearsay rules at trial, Plaintiff has no objection to such an order, but it has zero practical effect when it comes to narrowing the evidence for trial. For that reason, Defendants' general motion should be denied with leave for Defendants to raise objections to particular hearsay in particular police reports if and when that evidence is offered at trial.

There are numerous reasons that information in a police report may or may not be admissible. There may be two or three layers of hearsay, and it will be important to evaluate whether each layer is admissible. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2014) (citing Fed. R. Ev. 805). As Defendants acknowledge, information given by a witness and recorded by an officer in a police report may in some instances be admissible because it is introduced, not for its truth, but to show the presence or absence of probable cause. *Id.* But whether information in police reports helps establish or undermine probable cause is not the only basis on which information in a police report could be admissible. It could be admissible to show what information was given to prosecutors in a criminal case. *Woods v. City of Chicago*, 234 F.3d 979, 986-87 (7th Cir. 2000). Dkt. 292 at 2. Or the effect that information had—whether true or not— on the police investigation at issue. *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019). A report might fall within the business records exception. *Id.* at 585-86. It might record a present

3

sense impression or excited utterance. Fed. R. Evid. 803(1)(3). A then-existing condition. Fed. R. Evid. 803(3). Depending on the testimony at trial, it may be a recorded recollection. Fed. R. Evid. 803(5). The list of exceptions goes on and on. Parts of a report might be introduced where the declarant is unavailable and the statement is sworn under oath, Fed. R. Evi. 804(b)(1), or is a statement against interest, Fed. R. Evid. 804(b)(3). It may attack or support a declarant's credibility after introduction of a hearsay statement. Fed. R. Evid. 806. The hearsay may be admitted under the residual exception. Fed. R. Evid. 807. The report might be used to impeach. Or the report might not be admissible at all.

These examples amply demonstrate that it is too early to make a ruling on hearsay in all reports. With appropriate context and an actual item of evidence in mind, the parties will be able to make arguments, and the Court will be able to make rulings about whether items in police reports are inadmissible hearsay not meeting an exception.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 2**

**Introduction**

Defendants correctly point out that they amassed significant evidence implicating in Helmbacher's murder a person named Doug Lee, but, without explanation, abandoned their investigation into him, ultimately focusing entirely on Plaintiff. Plaintiff intends to introduce that evidence for a number of reasons that go to Plaintiff's claims and damages.

Defendants take the false position in many of their motions *in limine* that Plaintiff's due process fabrication theory is the only claim in this case, Dkt. 292 at 3, thereby rendering certain items of evidence irrelevant. They are wrong. In addition to due process fabrication claims, this Court concluded that Plaintiff's federal claims for unlawful detention in violation of the Fourth Amendment, failure to intervene, and conspiracy; and Plaintiff's state-law claims of malicious prosecution, intentional infliction of emotional distress ("IIED"), and conspiracy should be tried as well. *See* ECF No. 210 (Order on Summary Judgment) at 98, 111.Under well-settled law, the evidence of an alternative perpetrator is relevant to Defendants' liability on each of these claims, and it must be admitted for that reason.

Independently, the evidence is centrally relevant to the question of innocence and guilt— whether Plaintiff committed the murder at issue in this case. That question is central to the jury's damages inquiry, as the Seventh Circuit has clearly held, and it is relevant to other issues the jury must consider as well and cannot be barred.

I.    **Factual Background**

Following Plaintiff's 2016 exoneration based on DNA evidence excluding him as a contributor to the scrapings from Helmbacher's fingernails, the Decatur Police Department ("DPD") reopened the investigation into Helmbacher's murder. They focused on two suspects

5

from the original investigation: Doug Lee and Joseph Moyer, the first people to find Helmbacher's body. DPD attempted to collect buccal swabs from both people. Moyer cooperated, but Lee was "openly hostile" and threatened the officer who contacted him. Ex. 1 (Wittmer Dep.) at 105-106, 115-16, 121. Moyer was eventually excluded as a contributor to the fingernail DNA, but Lee was not. *Id.* at 167-69. To this day, Defendants have identified no evidence eliminating Lee as the killer. *Id.* at 150-51.

Defendants became suspicious of Lee early in the murder investigation. Ex. 2 (Search Warrant on 351 W. Macon St.); Ex. 3 (Search Warrant on Douglas Lee's Car). Lee was a local politician, landlord, and attorney in Decatur, Ex. 4 (Lee Dep) at 109, 111-113, 135, and he had a strained relationship with Helmbacher, who was his employee. Defendants learned that Helmbacher worked for Lee's law office and collected rent at Lee's rental buildings, Ex. 4 at 123-24, 136-37, 142, and that Lee was known to berate Helmbacher about business issues, Ex. 5 (09.13.1998 Follow Up Report). Defendants also learned that in the weeks leading up to the murder, Lee and Helmbacher had been in heated disputes about money: Lee thought Helmbacher was stealing rent, and Helmbacher felt he was not being paid enough. Ex. 4 at 136-37, 158, 162; Ex. 6 (09.01.1998 Follow Up Report) at Decatur 15, 17; Ex. 7 (08.27.1998 Follow Up Report) at Decatur 168; Ex. 8 (08.28.1998 Follow Up Report) at Decatur 192.

Defendants also learned that on the day of Helmbacher's murder, Lee was in Decatur to confront Helmbacher about their money conflicts, and Helmbacher planned to confront Lee as well. Ex. 6 at Decatur 15, 17. As the investigation unfolded, Defendants learned that Lee had gone over to Helmbacher's apartment alone during the time window in which Helmbacher was killed. Ex. 4 at 307-08; Ex. 9 (08.28.1998 Follow Up Report) at Decatur 183-184; Ex. 7 at Decatur 167; Ex. 3 at Decatur 279-280. Witnesses also described Lee as behaving erratically on

the evening of the crime before Helmbacher's body was reported. Ex. 10 (09.14.1998 Follow Up Report). It was Lee who "discovered" Helmbacher's body by using his key to open the locked apartment door. Ex. 8 at Decatur 190-191; Ex. 9 at Decatur 184; Ex. 11 (08.28.1998 Follow Up Report) at Decatur 200; Ex. 12 (08.28.1998 Follow Up Report) at Decatur 179. Defendants also learned that Lee called one of his friends after the murder and all but confessed "that he killed Bill." Ex. 6 at Decatur 16.

After learning this evidence about Lee and Helmbacher's disputes, Defendant Carlton executed a search warrant on Lee's car and collected items containing visible human blood and labeled them with a biohazard sticker. Ex. 13 (Pictures of towel) at Palmer (FA) 36-43; Ex. 14 (Bell Dep) at 83-84, 143-44; Ex. 15 (Pictures of package labeled "biohazard") at Palmer 5053; Ex. 16 (Pictures of package labeled "biohazard") at Palmer 15302-15306; Ex. 17 (Patton Dep) at 81. The towel clearly had probative value.

Given the significant evidence implicating Lee, including motive and opportunity, Defendant Carlton at one point considered Lee a "very strong suspect." *See* ECF No. 157-87 at Palmer (FBI) 17 (filed under seal). But within weeks, Defendant Ryan declared that Lee was "not a suspect anymore" and told the crime lab not to analyze the evidence from Lee's car. Ex. 18 (ISP conversation records) at Palmer 120; Ex. 19 (Aper Dep) at 64. At his deposition, Ryan was unable to provide any explanation why he reported that Lee was no longer a suspect. Ex. 20 (Ryan Dep.) at 201. Defendant Carlton then wrote a report stating falsely that there was "nothing incriminating" found in Lee's car (even though the evidence from Lee's car was probative and never analyzed at the lab), and that video evidence (which was inscrutable, and which Carlton kept in his desk until it was discovered in 2012 by another officer, *see* Ex. 21 (Case Supplemental Report)) suggested that Lee did not commit the murder. Ex. 22 (Helmbacher

7

Homicide Synopsis) at Decatur 142. In other words, Defendants Ryan and Carlton abandoned their investigation into a viable suspect in contravention of the evidence, and failed to disclose evidence relevant to that suspect.[1]

To be clear, this is not one piece of questionable evidence, as Defendants suggest. It is substantial evidence of Plaintiff's innocence that Defendants themselves acknowledged tended to implicate Lee in the crime. Defendants have identified no reason to exclude this valuable relevant evidence.

## II.     Evidence Implicating Lee is Relevant to Plaintiff's Claims and Damages

This quantum of evidence implicating Lee is highly relevant, and easily clears the bar set by Rules 401 and 402. "Relevance is a 'low threshold' to satisfy, as its definition is very broad." *Ott v. City of Milwaukee*, No. 09-C-870, 2015 WL 1219587, at *4 (E.D. Wis. Mar. 17, 2015) (citing *United States v. Boswell,* 772 F.3d 469, 475 (7th Cir. 2014)). A court cannot deprive a plaintiff of evidence he needs to prove elements of his claims or rebut defenses. Fed. R. Evid. 401 (relevant evidence is any "evidence having any tendency to make the existence of any fact that is *of consequence* to the determination of the action more probable or less probable than it would be without the evidence") (emphasis added); *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999-1003 (7th Cir. 2012) (court cannot deprive plaintiff of evidence needed to rebut defenses).

For one, legitimate evidence of an alternate suspect is evidence of innocence that goes to Plaintiff's damages, and depriving Plaintiff of this evidence is reversible error. *Parish,* 702 F.3d at 999. Second, as Plaintiff explained in his motion *in limine* number 3 (and incorporated into

---

[1] By the time Plaintiff was exonerated nearly 20 years later, new detectives at DPD justifiably returned to suspect Lee, and have been unable to eliminate him as a potential suspect in Helmbacher's murder. Ex. 1 at 150-51.

this response by reference), Dkt. 294 at 10-16, evidence that Defendants failed to investigate a known alternate suspect supports Plaintiff's Fourth Amendment and state law malicious prosecution claims; it also goes to his IIED and conspiracy claims. All the evidence Plaintiff seeks to admit about alternate suspect Doug Lee is "of consequence," Fed. R. Evid. 401—and indeed highly relevant—to least one of these claims, and should be admitted. To the extent Defendants argue that this evidence is "speculative," all circumstantial evidence is technically "speculative." Yet it is routinely admitted in civil and criminal cases alike. *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019).

### a. Independent Basis for Admission: Evidence of an Alternate Perpetrator is Evidence of Innocence, Which Goes to Damages

At an absolute minimum, this amount of reliable evidence that Lee (and thus not Plaintiff) may have committed the murder—including inculpatory DNA evidence generated since Plaintiff's conviction—is admissible to show Plaintiff's innocence and goes directly to damages. *Parish*, 702 F.3d 997; *see Beaman v. Freesmeyer*, 2019 IL 122654, ¶¶ 11-12. The Seventh Circuit took up the issue of alternate perpetrators as evidence of damages in *Parish*, in which it reversed a jury damages award in a wrongful conviction case on the ground that the plaintiff had been improperly barred from presenting evidence of "another possible perpetrator." *Id.* at 999-1000. The Court acknowledged the "primacy" of the innocence issue to the wrongful conviction case and concluded that the jury awarded "unfathomably-low" damages probably because it thought the plaintiff was guilty. *Id.* at 999. The court explained:

> Significant testimony as to Parish's guilt of the crime, and particularly the testimony of eyewitnesses identifying him, was admitted whereas testimony as to his innocence, including statements by those same eyewitnesses expressing their doubts as to that identification, was excluded. The result was that the jury was deprived of significant probative evidence as to the issue of Parish's guilt or innocence.

*Id.* at 999. The Court concluded that the decision to bar evidence of the alternate perpetrator—including DNA found on a hat left at the scene—alone warranted reversal. *Id.* The Court further explained, "If Parish can establish that another individual is responsible for the crime, that certainly is evidence that Parish is not the one responsible—rather strong evidence at that." *Id.* at 1002.

Plaintiff seeks to introduce similar evidence of an alternate perpetrator, including, as was the case in *Parish*, DNA. Given its value to Plaintiff's claims, this evidence is not unfairly prejudicial under Rule 403, and this Court should allow it. *Parish*, 702 F.3d at 1001-02; *see also Ott v. City of Milwaukee*, No. 09-C-870, 2015 WL 1219587, at *9 (E.D. Wis. Mar. 17, 2015) (evidence of alternate perpetrator is admissible in a wrongful conviction case to show damages).

### b.  Independent Basis for Admission: Evidence of Another Perpetrator Undermines Probable Cause

Next, to succeed on his malicious prosecution and Fourth Amendment claims, Plaintiff must prove that Defendants lacked probable cause to detain him and continue his criminal proceedings. *See Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 74 (malicious prosecution); *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (Fourth Amendment). Police officers' failure to pursue investigative leads, such as a viable alternate perpetrator, undermines probable cause. *See Dollard v. Whisenand*, 946 F.3d 342, 355 (7th Cir. 2019); *Fox v. Hayes*, 600 F.3d 819, 834-35 (7th Cir. 2010) (police cannot close their eyes to evidence that undercuts probable cause); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("An officer…may not close his eyes to facts that would clarify the situation."); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (reasonable avenues of investigation must be pursued).

During their investigation, the Defendants uncovered evidence that Lee was a viable alternate perpetrator. Yet Defendants abandoned their pursuit of him without explanation—at

10

least without any explanation that is documented in the records that survive.[2] This undermines

that they had probable cause to detain Plaintiff. In analyzing probable cause, officers are not

required to conduct additional investigation, but they may not ignore evidence tending to

undercut probable cause of which they are aware. *See Fox*, 600 F.3d at 834-35; *Taylor v. City of*

*Michigan City*, No. 3:16-CV-836 JD, 2018 WL 6528172, at *4 (N.D. Ind. Dec. 11, 2018). Thus,

Plaintiff will need this evidence to meet his burden of showing that there was no probable cause.

### c.  Independent Basis for Admission: Evidence that Defendants Abandoned Investigating a Viable Suspect Shows Malice

To succeed on his malicious prosecution claim, Plaintiff must also demonstrate

Defendants acted with malice, meaning they had "any motive other than that of bringing a guilty

party to justice." *Aleman v. Vill. of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011) (citation

omitted); *see Beaman*, 2021 IL 125617, ¶ 74; *Grayson v. City of Aurora*, 157 F. Supp. 3d 725,

746-47 (N.D. Ill. 2016). Though malice can be inferred from a lack of probable cause, *Beaman*,

2021 IL 125617, ¶ 141, Defendants' pursuit of Palmer and abandonment of Lee when they had

no evidence against Plaintiff and strong leads against Lee is also evidence of their ill intent.

### d.  Independent Basis for Admission: Evidence that Defendants Abandoned Investigating Lee is Probative of Fabrication

To succeed on his fabrication claim, Plaintiff must show that the defendant fabricated

material evidence used against the plaintiff in his trial, and that "plaintiff was damaged as a

result." *Taylor v. City of Chicago*, No. 14 C 737, 2021 WL 4401528, at *3 (N.D. Ill. Sept. 27,

2021) (citing Federal Civil Jury Instructions of the Seventh Circuit § 7.14 (2017 rev.); *Patrick v.*

---

[2] Defendants boldly state that "it is all but concluded" Lee had nothing to do with the murder, but this quip finds no support anywhere in the record. This is likely why Defendants cite nothing in support of it. Indeed, Lee is the only suspect who *was not* eliminated from the DNA in Helmbacher's nail scrapings. Ex. 1 at 167-69.

*City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020)). Evidence inculpating Doug Lee is probative of fabrication.

Whether Defendants knew of an alternate perpetrator and took steps to undermine the investigation into him is probative of whether they fabricated evidence to use against Plaintiff. Evidence that Defendants abandoned their investigation into Lee without reason, and then withheld evidence implicating him, goes directly to their state of mind during the investigation. *See Sornberger v. Knoxville*, 434 F.3d 1006, 1016 (7th Cir. 2006) ("the record is susceptible to the view that the officers themselves realized the weakness of their case, and therefore manipulated the available evidence to mislead the state prosecutor into authorizing Scott's arrest"); *Gilliam v. Sealey*, 932 F.3d 216, 240–41 (4th Cir. 2019) (holding that plaintiff could establish a due process violation where the jury found that defendants' failure to adequately investigate was done to hide defendants' misconduct during the investigation).

### e.  Independent Basis for Admission: Evidence of Lee's Guilt Is Also Admissible To Prove Other Claims

Evidence inculpating Lee is also relevant to Plaintiff's conspiracy and IIED claims. Fed. R. Evid. 401.

***Conspiracy***. To prove his federal and state conspiracy claims, Plaintiff must present evidence that Defendants agreed to carry out an unlawful act. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018); *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096, at *16 (N.D. Ill. Mar. 19, 2021). An agreement can be inferred from the circumstances. *Daugherty*, 906 F.3d at 612. Evidence that Defendants Carlton and Ryan abandoned a viable suspect is probative of whether they acted in conspiracy. For example, early on, Defendants Carlton and Ryan seem to have been legitimately investigating Lee. Carlton looked into his alibi (and was never able to find evidence of one), and executed a search warrant on Lee's car, labeled the evidence collected as a

12

biohazard, and sent it to the crime lab. But at some point, for no articulable reason, Ryan told the crime lab not to test the biohazard evidence and declared that Lee was "not a suspect" anymore. Ex. 18 at Palmer 120; Ex. 19 at 64. Carlton then wrote a report falsely stating there was "nothing incriminating" found in Lee's car and that a surveillance video (which was, in reality, indecipherable and which Carlton never disclosed, *see* Ex. 21) suggested that Lee did not commit the murder, Ex. 22 at Decatur 142. The fact that both Defendants abandoned Lee before they turned their attentions to Palmer, even though there was no evidence clearing him as a suspect, is strong evidence that they acted in agreement.

This Court addressed Plaintiff's conspiracy claim against Ryan in its order on summary judgment. ECF No. 210. This Court wrote that the evidence that Defendants Carlton and Morville participated in a conspiracy speaks for itself, ECF No. 210, 100-01, but cautioned Plaintiff to present additional evidence that Defendant Ryan was involved in the conspiracy. *Id.* at 101. Evidence that Defendants Carlton and Ryan jointly abandoned their investigation into a viable suspect without reason does exactly that. It is therefore highly relevant and admissible.

***Intentional Infliction of Emotional Distress***. One of the elements Plaintiff must prove to succeed on his IIED claim is that Defendants' conduct was "extreme and outrageous." *Lovelace v. Gibson*, 2020 WL 6049901, at *32 (C.D. Ill. Oct. 13, 2020). Evidence that Defendants were aware of evidence that Lee committed the murder and never cleared him, knowingly allowing the real killer to walk free while Plaintiff was locked behind bars for nearly two decades, makes their conduct all the more extreme and outrageous. *Henry v. Ramos*, No. 97 C 4025, 1997 WL 610781, at *2 (N.D. Ill. Sep. 28, 1997) ("An average member in the community would consider it outrageous for police officers to falsely frame, arrest and imprison an innocent citizen.").

Evidence of Lee's involvement in the murder that was available to Defendants during their investigation is relevant and admissible for IIED.

### III.     Defendants' Arguments Against this Evidence Have No Merit

Defendants say in a single conclusory sentence that evidence implicating Lee is not relevant to Plaintiff's malicious prosecution claim, and cite a single case: *Beaman v. Freesmeyer*, 2019 IL App (4th) 160527, ¶ 115. This undeveloped argument has been waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *see also Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir.1998) ("This court has refused to consider unsupported or cursory arguments."); *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"). And in any event, the citation does not support their assertion, and the case has been overruled. *Beaman v. Freesmeyer,* 2021 IL 125617.

Defendants are correct that Defendants' failures to investigate Lee is not an independent constitutional violation, and Plaintiff does not argue that they are. Plaintiff also does not intend, as Defendants suggest, to argue that Defendants had an obligation "eliminate all potential suspects" before charging Plaintiff. But a Fourth Amendment claim requires an examination of

14

what a reasonable officer would believe under the circumstances, including the totality of the

evidence available. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011).[3]

## IV.     Defendants Face No Risk of Prejudice if the Evidence Is Admitted, but Plaintiff Faces Prejudice if It Is Not

Defendants also suggest they may face prejudice from this evidence, but they have not

articulated a single reason why it is actually prejudicial. It is certainly prejudicial to the extent it

helps Plaintiff prove his case, but there is no *unfair* prejudice that would allow barring the

evidence under Rule 403. Indeed, "[t]he most relevant evidence is, by its nature, prejudicial, but

it is only *unfair* prejudice that requires exclusion." *Parish*, 702 F.3d at 1001. Setting aside that

Defendants have not met the minimum threshold of providing any factual or legal basis for their

argument beyond a mere recitation of Rule 403, *see supra* at 1-2, it is Plaintiff who would be

prejudiced if this evidence is excluded.

Defendants make clear in their motions *in limine* that they intend to argue that Plaintiff

killed Helmbacher. Plaintiff must be allowed to rebut this with evidence of innocence. The DNA

that exonerated him and evidence of an alternate perpetrator both constitute powerful evidence of

innocence, and he must be allowed to introduce them. *See Beaman v. Freesmeyer*, 2019 IL

122654, ¶¶ 11-12; *Parish*, 702 F.3d at 999-1003; *Ott*, No. 09-C-870, 2015 WL 1219587, at *9.

To be clear, Plaintiff does not intend to put on a "sideshow trial." Plaintiff intends to

present narrow evidence that (1) he is innocent of the Helmbacher murder; and (2) Defendants

were aware of a viable alternate perpetrator and failed to investigate him. As for the former:

evidence of Lee's guilt, including the DNA developed in recent years that excludes Palmer but

---

[3] Defendants argue that Plaintiff should not be allowed to introduce evidence of Lee's "propensity for evidence." Plaintiff does not intend to introduce evidence of prior violent acts to suggest that Lee had a propensity for violence and acted in accordance therewith.

not Lee, is evidence that Palmer is innocent. To the latter: the reliable evidence of Lee's guilt that was available but ignored by Defendants during their investigation is evidence of a sham investigation and goes to the Fourth Amendment, malicious prosecution, conspiracy, and IIED claims. This evidence is relevant and admissible.

## Conclusion

Plaintiff respectfully requests that this Court deny Defendants' motion to bar facts about alternate suspect Doug Lee.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 3**

It is unclear what relief Defendants are asking for in their Motion *in Limine* No. 3. Defendants list three items of evidence they state should be excluded after summary judgment was granted on Plaintiff's *Brady* claims—the suppressed FBI analysis of video of Doug Lee at a gas station, suppressed evidence that implicated Lee as the killer, and suppressed evidence that would have impeached Ray Taylor's account of Palmer's confession and participation in the crime. Dkt. 292 at 5-6. But then Defendants state broadly that all evidence that they suppressed during the investigation of the Helmbacher homicide and the prosecution of Plaintiff should be excluded. *Id.* This broad request for relief should be denied because it does not even identify what pieces of evidence Defendants hope to exclude from trial. *See supra* at 1-2.

But more importantly, Defendants' argument is logically faulty. Defendants contend that, because this Court dismissed Plaintiff's *Brady* due process claims at summary judgment, Plaintiff should not even be able to discuss the evidence that Defendants suppressed. That gets things exactly backward. The dismissal of Plaintiff's *Brady* due process claims at summary judgment means that Plaintiff cannot contend at trial that Defendants *should be held liable* for suppressing material exculpatory or impeachment evidence. Plaintiff will obviously adhere to the Court's summary judgment ruling at trial.

But that does not mean that all evidence suppressed by Defendants in the course of their investigation of the Helmbacher homicide and the prosecution of Plaintiff is suddenly unimportant to the case. On the contrary, while that evidence cannot be used to support a claim no longer in the case, it can be used to support other theories of liability. One piece of evidence may be relevant to multiple different theories. For example, as discussed, the fact that there was an alternative perpetrator and the evidence pointing to that perpetrator (suppressed by

17

Defendants) remains probative of the issue of Plaintiff's innocence, and thus damages. *See supra*
at 5-16 (Plaintiff's Response to Defendants' Motion *in Limine* No. 2). The fact that there was
evidence that Ray Taylor's account implicating Plaintiff was false is similarly probative of
Plaintiff's innocence. That evidence is also relevant to whether or not there was probable cause.
*See id.*

In addition to the items of evidence being relevant in and of themselves, the fact that
Defendants suppressed those items of evidence is also relevant to other elements of other claims
in the case. For example, Plaintiff contends that Defendants fabricated blood evidence on his
shoes, and the fact that Carlton omitted from two separate testimonies that no blood had been
found on the shoes the first time they were sent to the ISP lab is certainly relevant to that claim.
Moreover, Defendants' suppressions are relevant to the malice element of Plaintiff's malicious
prosecution claim, and to the malice Plaintiff must show to demonstrate an entitlement to
punitive damages. Defendants will likely claim that they acted in good faith throughout their
investigation, and showing that they suppressed evidence of the real perpetrator or evidence that
would undermine Ray Taylor—their only "witness" implicating Plaintiff—shows that they acted
intentionally or with malice. Defendants' suppressions are also relevant to whether Defendants
had probable cause for Plaintiff's prosecution. As explained already, evidence that Defendants
suppressed and failed to follow-up on investigative leads, like the real perpetrator, demonstrates
a lack of probable cause. *See supra* at 5-16 (Plaintiff's Response to Defendants' Motion *in
Limine* No. 2). And it is relevant to establish Defendants' conspiracy to violate Plaintiff's rights
under federal and state law. *Id.*

In sum, the items of evidence that Defendants suppressed in the criminal case are
themselves probative of other claims and theories in the case, other than the dismissed *Brady*

claims. And the fact that Defendants suppressed evidence is itself probative of those other claims

and theories as well. Moreover, Defendants suffer zero prejudice if this evidence is admitted—

the jury will not be instructed on and will not even have the opportunity to find Defendants liable

on a *Brady* theory. Meanwhile, exclusion of this evidence would fatally undermine Plaintiff's

case by depriving Plaintiff of evidence critical to his claims that survived summary judgment and

that are set for trial. Defendants' motion to exclude all suppressed evidence should be denied.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 4**

Defendants' Motion *in Limine* No. 4 asks the Court to exclude "[a]ll information and evidence from [Plaintiff's] post-conviction proceedings. Dkt. 292 at 7. Among that evidence is the fact that forensic evidence found in the victim's hands revealed the killer's DNA and excluded Plaintiff, that Plaintiff's conviction was vacated as the result of this exonerating DNA evidence, that state prosecutors concluded that he could not have been the person who committed the murder and dropped the charges against him (and doubled down on that conclusion during the certificate of innocence proceedings), that he was released from prison, that the Decatur Police Department continued to investigate the Helmbacher homicide to find the real killer after Plaintiff's release (and could not eliminate alternative suspect Doug Lee), and that Plaintiff received a certificate of innocence from the State of Illinois. *Id.* at 6-7. A full factual explanation of this procedural history is contained in Plaintiff's response to Defendants' motions for summary judgment. Dkt. 165 at 19.

Defendants' motion should be denied. As a threshold matter, Defendants' entire argument relies on the mistaken premise, in Defendants' words, that "[a]fter the Court's summary judgment ruling the only issue left in this case is whether the remaining defendants…planted the victim's blood in plaintiff's shoe." Dkt. 292 at 6. But that is not the sole remaining issue in the case, and Defendants' argument that it is makes obvious that they have failed to show that the post-conviction evidence they want excluded is inadmissible for any purpose, which is their burden at this stage. *See supra* at 1-2. For that reason alone, Defendants' motion should be denied.

Turning to the merits, Defendants ask to exclude a broad array of evidence centrally relevant to the upcoming trial. In their view, all evidence that came to light after Plaintiff was

wrongfully convicted is irrelevant to the claims and issues that the jury must decide. The reason? Defendants assert only that: "Relitigating the post-conviction evidence would hijack the trial way beyond the issue the Court identified as remaining." Dkt. 292 at 9. Then they cite a case that says post-arrest evidence is irrelevant to whether probable cause existed. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). Regardless whether that is true in § 1983 cases (it is not), post-arrest evidence is relevant to many other issues in this case, as discussed further below.

And then they broadly state that "any such information or evidence should be excluded under [Rule] 403." *Id.* There is no further discussion. No cases are cited. The reason any particular item of evidence is inadmissible is not discussed.

Suffice it to say that Defendants are flatly wrong, and their position contradicts controlling Seventh Circuit precedent. The fact that Plaintiff was exonerated by DNA evidence, his conviction was set aside, charges were dropped, he was released from prison, and he received a certificate of innocence are all relevant to Plaintiff's innocence, which is a central component of the damages he claims in this case. In *Parish v. City of Elkhart*, the Seventh Circuit reversed a decision excluding exactly the type of evidence that Defendants ask to exclude here, holding that the evidence was relevant to innocence and damages, and deciding that there was nothing *unfairly* prejudicial about the admission of evidence of innocence. 702 F.3d 997, 1000-01 (7th Cir. 2012). To obtain the relief that they seek, Defendants would have to explain to this Court why *Parish* does not control, and they have not tried to do that.

Evidence that Plaintiff was exonerated because he was excluded by DNA evidence is also relevant to liability for Plaintiff's claims remaining for trial. For example, these facts and forensic evidence showing that Plaintiff was not the perpetrator make it more likely that the victim's blood ended up on his shoes via a blood plant—*i.e.*, if DNA shows that someone else

committed the crime, there is no good crime-scene related explanation for how the blood ended up on Plaintiff's shoes, and the prospect that it was planted becomes more likely. In addition, the facts that Plaintiff's conviction was set aside, charges were dropped, and Plaintiff received a certificate of innocence are relevant to Plaintiff's federal Fourth Amendment/unlawful detention/malicious prosecution claims, and to his state malicious prosecution claims, which require a showing of favorable termination.[4] *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022); *Beaman v. Freesmeyer*, 2021 IL 125617, ¶¶ 107-113, reh'g denied (Sept. 27, 2021); *Patrick v. City of Chicago*, 974 F.3d 824, 832-34 (7th Cir. 2020). Moreover, knowing that Plaintiff's conviction was set aside and the reasons why is essential to the jury understanding how this civil case came to be, and it will focus their attention on the substantive claims before it—whether Defendants violated federal and state law in obtaining the conviction—instead of on Plaintiff's innocence or unanswered questions about the reasons that Plaintiff's conviction was set aside. Defendants do not provide any argument on these points, and their motion should be denied.

Defendants cite one case to support their argument: *Sanchez v. Chicago*, No. 12 C 06347, 2016 WL 4905672, at *8 (N.D. Ill. Sept. 15, 2016). This case has no bearing here. Among the many distinctions, (1) *Sanchez* is not a wrongful conviction case; (2) Mr. Sanchez was convicted of the crime underlying his case and his post-conviction pursuits were unsuccessful; (3) Mr. Sanchez sought to introduce "extraneous" details about those unsuccessful challenges, such as, that "he was not allowed to testify" and "discovery was not provided to him"; and (4) Mr. Sanchez sought to introduce this evidence relative to an argument about issue preclusion. *Id.* at 8-9. This is a far cry from Mr. Palmer's successful post-conviction proceedings, exoneration,

---

[4] Plaintiff's Motion *in Limine* number 1, Dkt. 294 at 1-4, addresses the reasons his certificate of innocence should be admitted, and he incorporates those arguments here by reference.

and certificate of innocence that made this § 1983 case possible in the first place. Defendants cite nothing else to support their arguments, and their motion should be denied.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION *IN LIMINE* NO. 5**

Plaintiff, Charles Palmer, respectfully requests that this Court deny Defendants' motion

to bar Plaintiff from arguing that Defendants conducted a deficient investigation into the murder

of William Helmbacher because this evidence is highly relevant to Plaintiff's claims. Dkt. 292 at

9-10. In support, Plaintiff states the following:

**Argument**

I.     **Evidence of Defendants' Inadequate Investigation is Relevant to Plaintiff's**
       **Claims**

Defendants argue that Plaintiff should not be permitted to introduce evidence of

Defendants' incomplete investigation because this evidence is irrelevant to Plaintiff's claims.

This argument is plainly wrong. As Plaintiff explains throughout his responses to Defendants'

motions *in limine*, it is well-established that evidence of Defendants' inadequate investigation is

relevant to Plaintiff's due process, illegal detention, and malicious prosecution claims.

*See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986); *Sornberger v. Knoxville*, 434 F.3d 1006,

1016 (7th Cir. 2006); *Fox v. Hayes*, 600 F.3d 819, 834-35 (7th Cir. 2010); *Aleman v. Vill. of*

*Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011) (citation omitted); *Gilliam v. Sealey*, 932 F.3d

216, 240–41 (4th Cir. 2019) (holding that plaintiff could establish a due process violation where

the jury found that defendants' failure to adequately investigate was done to hide defendants'

misconduct during the investigation); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 746-47

(N.D. Ill. 2016); *Brinson v. Syas*, 735 F. Supp. 2d 844, 854 (N.D. Ill. 2010) (finding evidence

that defendants failed to investigate discrepancies between plaintiff and the true suspect

established a genuine issue of material fact as to the reasonableness of the decision to arrest

plaintiff); *Walker v. Spiller*, No. CIV. A. 97-6720, 1998 WL 306540, at *6 (E.D. Pa. June 9,

24

1998) (holding that plaintiff can establish a constitutional violation for a failure to investigate when probable cause for plaintiff's arrest was weak).

In this case, early in the investigation into Helmbacher's death, Defendants received evidence that Helmbacher's boss, Doug Lee, was a potential murder suspect. Yet, Defendants did not follow up on leads pointing to Lee's culpability, and intentionally chose not to collect evidence that would have connected Lee to the murder or would have shown that Plaintiff was innocent. For example, Defendants decided not to compare Lee's fingerprints to the latent prints obtained from the crime scene; and instructed the lab not to test the clothing and blood-spotted towel obtained from Lee's car pursuant to a search warrant. *See supra*, Plaintiff's Response to Defendants' Motion *in Limine* No. 2.

Defendants also failed to follow up on a number of investigative leads that could have helped reveal the killer. For instance, they failed to inform the Illinois State Police analysts that Helmbacher had defensive wounds and thus that the attacker's DNA profile could be under Helmbacher's fingernails; declined to obtain Plaintiff's hair sample so that it could be compared to the hairs found at the crime scene; and decided not to follow up with Helmbacher's neighbor who saw Helmbacher alive at 7:50 p.m. (a time that would have definitely proven that Taylor's statement implicating Plaintiff was false). Dkt. 165 at 60, 65, 90-91, 97-98; Ex. 3 (Search Warrant on Douglas Lee's Car); Ex. 26 (08.31.1998 Follow Up Report); Ex. 27 (Preliminary Offense Report) at 4. Significantly, Defendants did not ask the lab to analyze Helmbacher's fingernail scrapings for DNA, the very testing procedure that ultimately led to Plaintiff's exoneration almost two decades later. Dkt 165 at 86, 96-97. Instead, Defendants fabricated evidence to inculpate Plaintiff and used this fabricated evidence to cause Plaintiff's wrongful

25

conviction. The jury should be permitted to consider this sham investigation when evaluating Plaintiff's claims.

Defendants' passing citation to case law is unavailing, as none of the cases are remotely relevant or applicable to the facts or claims here. In both *Camm v. Faith,* 937 F.3d 1096, 1109-10 (7th Cir. 2019) and *United States v. Gray*, 648F.3d 562, 567 (7th Cir. 2011), the courts analyzed the officers' failure to develop evidence through the framework established by *Brady v. Maryland*, 373 U.S. 83 (1963). There is no *Brady* claim here, and Plaintiff is not arguing that Defendants' failure to investigate amounts to a *Brady* violation. In fact, when applied to the facts and claims in this case, *Camm* stands for the exact opposite of what Defendants say it does, and in fact supports Plaintiff's position: The *Camm* court acknowledged (as Plaintiff has argued) that evidence of a "shoddy" investigation *could* support the argument that the officers' investigative failures were based out of an intentional desire to prevent evidence against the accused from being undermined. *See Camm*, 937 F.3d at 1110.

Defendants also argue that evidence of their inadequate investigation should be barred because it is not relevant, mistakenly relying on *Burritt v. Ditlefsen*'s holding that there is "no duty to investigate extenuating circumstance or search for exculpatory evidence *once probable cause has been established*...." 807 F.3d 239, 250-51 (7th Cir. 2015) (emphasis added). Their reliance on this case is misplaced. *Burritt* applies only when there is already probable cause, and this Court ruled that a jury could reasonably conclude that there was no probable cause to subject Plaintiff to judicial proceedings or to arrest and detain Plaintiff. Dkt. 210 at 98-99, 109.

In an effort to make *Burritt* relevant, Defendants point to allegedly inculpatory statements by someone named Ray Taylor to suggest that probable cause existed. But this argument is belied by the record. As this Court already acknowledged, the record shows that prosecutors

26

determined that Taylor's statements were insufficient to create probable cause to charge Plaintiff

and it was only after the planted blood was found on Plaintiff's shoes that a probable cause

finding was made. *Id.* at 99. Plaintiff should be permitted to present evidence to a jury that in the

face of weak evidence of Plaintiff's alleged guilt, Defendants willfully failed to investigate leads

that might disprove their theory. Taken together, a jury could conclude that Defendants' deficient

investigation was indicative of plan to violate Plaintiff's constitutional rights and frame him for

Helmbacher's murder. *See Sornberger,* 434 F.3d at 1016 *("*A police officer may not close [his]

eyes to fact that would clarify the circumstance of an arrest."); *see id.* ("[R]easonable avenues of

investigation must be pursued, especially when…it is unclear who committed the crime.");

*see also Walker,* 1998 WL 306540, at *6; *Gilliam*, 932 F.3d at 240–41. As Defendants note in

their brief, any ruling that turns on the existence of probable cause, as *Burritt* does, cannot apply.

As such, this argument has no merit.

## II.    Defendants Have Waived Additional Arguments

Finally, Defendants make a cursory catchall argument that evidence of Defendants'

deficient investigation should be excluded because it will "produce unfair prejudice, confusion, a

misleading of the jury, undue delay, and waste of time." Dkt. 295 at 10. Defendants make no

argument and cite to no case or facts to support this assertion and thus, the Court should not

consider it. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *see also Otto v.*

*Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir.1998) ("This court has refused to

consider unsupported or cursory arguments."); *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995)

("We have made it clear that a litigant who fails to press a point by supporting it with pertinent

authority, or by showing why it is sound despite a lack of supporting authority, forfeits the

point."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have

made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]”); *Radke's Inc. v. Bastian*, No. 09-01258, 2011 WL 811377, at *1 (C.D. Ill. Mar. 2, 2011) (noting that perfunctory and undeveloped argument do not merit consideration by the court).

Further, Plaintiff has demonstrated why evidence of Defendants' incomplete investigation has significant probative value, *supra*, and there is no reason to believe that this evidence would confuse or mislead a jury, cause undue delay, or waste time.

### Conclusion

Defendants request to bar evidence of Defendants' deficient investigation should be denied because this evidence is relevant to Plaintiff's due process, illegal detention, and malicious prosecution claims. Thus, Plaintiff respectfully requests that this motion be denied.

28

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* NO. 6**

Plaintiff, Charles Palmer, respectfully requests that this Court deny Defendants' motion

to bar Plaintiff from arguing that Defendant Carlton lied at Plaintiff's preliminary hearing

because Defendants improperly seek to use the motion *in limine* process to resolve a dispute of

fact. Dkt. 298 at 11. In support, Plaintiff states the following:

**Factual Background**

On the evening of August 27, 1998, William Helmbacher was murdered. Dkt. 165 at 7.

When Helmbacher's body was found, it showed that he was severely beaten, and the body was

surrounded with blood. *Id.* at 7. Based on the crime scene it was likely that the murderer's

clothing had blood on it. During the investigation, Defendants confiscated Plaintiff's shoes—a

pair of dirty black and white Fila sneakers, Dkt. 165 at 14, and claimed that a witness, Ray

Taylor, stated that Plaintiff was wearing the Filas at the time Helmbacher was murdered and they

had gotten covered with blood. *Id.* at 15. The Filas were sent to the Illinois State Police ("ISP")

crime laboratory to be examined for Helmbacher's blood. *Id.* At the time of testing there was no

physical evidence, eyewitness testimony, or legitimate evidence tying Plaintiff to Helmbacher's

murder. *Id.* at 14. On September 29, 1998, following a thorough examination, the ISP issued a

report to Defendant Carlton stating that no blood was on the Filas. *Id.* at 15.

Defendant Carlton was aware that no blood had been found on the shoes and also knew

that based on this forensic finding, the prosecutor declined to charge Plaintiff with any criminal

activity associated with Helmbacher's murder *Id.* at 16. In response, Defendants planted

Helmbacher's blood on Plaintiff's shoes, and then Defendant Carlton sent them back to the ISP

crime lab to be torn apart looking for blood. *Id.* at 16-19. After this second exam, ISP reported

29

that Plaintiff's right shoe had three spots of the victim's blood on it, and Plaintiff was charged with murder. *Id*. at 19.

The record developed in this case shows that: (1) prior to the preliminary hearing, Plaintiff's shoes were sent to the lab for testing only twice, and (2) the first test showed there was no blood on Plaintiff's shoes.

On February 18, 1999, Carlton testified at Plaintiff's preliminary hearing. *Id*. at 88, ¶ 300. During his testimony, Carlton testified as follows:

> Q: Now did the police then follow-up and authorize criminal and scientific analysis of the shoes to be done?
>
> A: Yes, we did. We sent them to the Illinois State Crime Lab to be tested to find out if they had any blood on them. *Results came back that they did have human blood. It was again sent off to be checked for DNA* along with the standard from William Helmbacher. The results came back that the blood on the shoes was that of William Helmbacher.

Ex. 25 at 3 (Prelim. Hrg. Tr.) at Decatur 5720:15-22 (emphasis added). At best, this is a misrepresentation of facts known to Carlton at the time he testified. At no point did Defendant Carlton take any steps to correct this testimony.

Similarly, at the suppression hearing, Carlton testified:

> Q: After you took the shoes from Mr. Palmer, what did you do next with the shoes?
>
> A: They were placed into an evidence bag and sent off to the lab.
>
> …
>
> Q: And are you aware whether or not Mr. Palmer was charged by the State's Attorney's office for that offense?

30

A: He was not charged at that time.

Q: All right. About five months later the DNA testing on the shoes came back from the lab, is that right?

A: That's correct.

Ex. 25 at Decatur 5744-5745. This too is an omission of highly important facts—that the shoes were sent to the crime lab once and no blood was found, they were sent back to the police department, they went missing from the evidence locker for over a week, and then were sent back to the crime lab—known to Carlton at the time he testified.

**Argument**

As this Court already acknowledged in its order on summary judgment, this testimony is "troubling." Dkt. 210 at 79. Defendants nevertheless request that this Court tailor the presentation of this false testimony to suit and bolster their reframing of the facts. Specifically, Defendants request that this Court bar Plaintiff from arguing to the jury that Carlton's statement at the preliminary hearing was false. Dkt. 292 at 11.[5] This request should be denied.

This request is an attempt to revive a summary judgment argument that this Court has already rejected. Dkt. 210 at 79. In fact, this Court reviewed the record on this point and found that Carlton's testimony was "troubling" and that based on this testimony "a trier of fact could conclude that Carlton was misstating the evidence and being deceptive about what happened involving the shoes and covering up the fact that no human blood was found the first time." *Id.* Carlton's false testimony is evidence of malice for Plaintiff's malicious prosecution claim, demonstrates the continuing conspiracy to cover up Defendants' fabricated evidence against

---

[5] Defendants do not (and cannot) ask for Defendant Carlton's prior statements and testimony to be excluded, as such evidence is admissible under Federal Rules of Evidence 801(d)(2), 804(b)(1), and 803(8).

Plaintiff, and constitutes the type of conduct that shocks the conscience in relation to Plaintiff's intentional infliction of emotional distress claim.

Moreover, a motion *in limine* is an improper vehicle for Defendants' request. The purpose of motions *in limine* is ensure the efficient conduct of trials by "resolving evidentiary disputes before trial" to "guide the parties on what evidence will be admitted at trial." *Dahlstrand v. FCA US, LLC*, No. 15 CV 7603, 2021 WL 4318322, at *1 (N.D. Ill. Jan. 14, 2021); *see United States v. Tokash,* 282 F.3d 962, 968 (7th Cir.2002) ("Motions *in limine* are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.")  Thus, these motions should not be used, as Defendants attempt to do here, to resolve disputes of fact, or bar Plaintiff from presenting evidence to support his claims and/or rebut defenses. *See Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999-1003 (7th Cir. 2012) (court cannot deprive plaintiff of evidence needed to rebut defenses). Indeed, in closing arguments, "Plaintiff's counsel may suggest inferences regarding the evidence and characterize the evidence in a way that supports Plaintiff's case." *Elrod v. Yerke*, 890 F. Supp. 2d 995, 1005 (N.D. Ill. 2012); *Woodruff v. Lane*, 818 F.2d 1369, 1376 (7th Cir. 1987) ("Under Illinois law, a prosecutor may comment on the evidence and the reasonable inferences to be drawn from that evidence. The law of this Circuit is no different.") (internal citation omitted). Defendants' motion should be denied.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* NO. 7**

Plaintiff, Charles Palmer, respectfully requests that this Court deny Defendants' motion to bar Plaintiff from presenting evidence that Plaintiff was acquitted of burglary, Dkt. 292 at 11-12, because this evidence is relevant to Plaintiff's claims.

**Factual Background**

On August 26, 1998, William Helmbacher reported that his home had been burglarized and certain items were missing. Dkt. 165 at 10-11. The following evening, Helmbacher was found dead in his apartment. *Id.* at 7. About two weeks later, a white garbage bag containing items belonging to Helmbacher was found six blocks from the crime scene. *Id*. at 10. One latent fingerprint on the bag matched a man named Ray Taylor. *Id.* at 11. After receiving the fingerprint results, Taylor was brought to the police station, where Defendant Carlton and Detective Bell interrogated him. *Id.* at 69-70. During this interrogation Taylor falsely stated that he and Plaintiff burglarized Helmbacher's apartment the day before the murder. *Id.* at 70-71. (Taylor's story about the extent of his participation in the burglary changed significantly between tellings.) Taylor also stated that the day after the burglary day, Plaintiff confessed to Taylor that Plaintiff murdered Helmbacher as a follow-up to the burglary from the day before. *Id*. at 72. This series of events would ultimately be used to suggest a motive for the killing.

Shortly after Taylor's interrogation, Plaintiff was arrested and interrogated. *Id.* at 77. During his interrogation, Plaintiff truthfully denied having any knowledge of the burglary or the murder. *Id.* at 78. On January 28, 1999, an arrest warrant was issued for Plaintiff for first-degree murder and burglary. *Id*. at 92. Taylor was also charged with burglary. Ex. 23 (Ahola Dep.) at 66:1-12.

33

At trial, the jury heard Taylor falsely testify about yet another version of the burglary, in which Plaintiff burglarized Helmbacher's apartment the day before the murder while Taylor acted as lookout. *Id.* at 94. Taylor's testimony was the only evidence connecting Plaintiff to the burglary. At the close of trial, the jury acquitted Plaintiff of the burglary. *Id.* at 95. In exchange for his false and inculpatory testimony against Plaintiff, Taylor's burglary charge was dismissed. *Id.* at 95-96.

## Argument

In two conclusory sentences Defendants assert that Plaintiff's acquittal on his burglary charge is irrelevant to Plaintiff's claims and inadmissible under Federal Rule of Evidence 403. This argument is perfunctory, and this Court should find that the Defendants have waived this issue. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *see also Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir.1998) ("This court has refused to consider unsupported or cursory arguments."); *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Radke's Inc. v. Bastian*, No. 09-01258, 2011 WL 811377, at *1 (C.D. Ill. Mar. 2, 2011) (noting that perfunctory and undeveloped argument do not merit consideration by the court).

If this Court chooses to consider the argument nonetheless, Defendants' motion should be denied because evidence of Plaintiff's acquittal is relevant to Plaintiff's due process and malicious prosecution claims, and to rebut Defendants' claim of his guilt. *See Hawthorne*

34

*Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds.).

First, evidence of the acquittal helps Plaintiff prove an essential element of his due process claim: materiality. To prove fabrication, Plaintiff must show that the defendant fabricated *material* evidence used against the plaintiff in his trial—in this case fabricated blood evidence—and that "plaintiff was damaged as a result." *Taylor v. City of Chicago*, No. 14 C 737, 2021 WL 4401528, at *3 (N.D. Ill. Sept. 27, 2021) (citing Federal Civil Jury Instructions of the Seventh Circuit § 7.14 (2017 rev.); *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020)).

The only evidence presented at trial connecting Plaintiff to the burglary was Taylor's false story. And the only trial evidence of Plaintiff's participation in Helmbacher's murder was (1) Defendants' fabricated blood evidence on Plaintiff's shoes, and (2) Taylor's false statements and testimony. Thus, Plaintiff's acquittal on the burglary charge demonstrates that the jury did not believe Ray Taylor, because in order to acquit Plaintiff of burglary, the jury must have rejected Taylor's testimony. It thus follows that the jury relied only on evidence that Helmbacher's blood was on Plaintiff's shoes to convict Plaintiff of murder—evidence Defendants fabricated. This establishes materiality of the blood evidence.

Additionally, evidence of Plaintiff's acquittal is necessary to rebut Defendants' arguments about Plaintiff's guilt. Evidence of Plaintiff's alleged involvement and motive necessarily stem from Taylor's false statements, and Defendants will likely attempt to introduce these statements. In response, Plaintiff must be able to show that those allegations are false, and evidence of an acquittal is probative of this fact.

35

Further, where Taylor says that Plaintiff's motive to try to rob and subsequently kill Helmbacher stemmed from Plaintiff's burglary of Helmbacher's apartment the day before, the acquittal impeaches this statement. If Plaintiff did not rob Helmbacher and come to believe he had money, he had no motive to go to Helmbacher's apartment and kill him. This acquittal instead supports Plaintiff's position that Taylor's statement was too incredible to form the basis of probable cause to charge Plaintiff with Helmbacher's murder.

Finally, Defendants provide no explanation for how this evidence implicates any of the concerns in Federal Rule 403 because Rule 403 does not apply. There is no reason to believe that this evidence is unduly prejudice, confusing, misleading, time-wasting, or cumulative.

For the foregoing reasons, Defendants' motion to bar evidence about Plaintiff's acquittal on the burglary charge should be denied.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* NO. 8**

Plaintiff, Charles Palmer, respectfully requests that this Court deny Defendants' motion to bar Plaintiff from presenting evidence that just weeks after Ray Taylor testified against Plaintiff at trial, prosecutors dismissed Taylor's burglary charge. This evidence is admissible to show Taylor's bias, self-interest, and motive to provide false statements and testimony against Plaintiff. Dkt. 292 at 12.

### Argument

Plaintiff incorporates the factual background in Plaintiff's Response in Opposition to Defendants' Motion *in Limine* No. 7 by reference here.

Defendants erroneously argue that evidence of Taylor's burglary charge getting dismissed is irrelevant merely because the State's Attorney's Office was the institution that dismissed the charge. But Defendants fail to consider that Plaintiff is entitled to introduce evidence of a witness's bias and motive to provide a false statement. That is the case here.

When Taylor was interrogated by Defendant Carlton and Detective Bell, he was informed that his fingerprints were found on the garbage bag containing Helmbacher's stolen items. Dkt. 165 at 70. Prior to his interrogation, Taylor knew police were aware that, Taylor had recently been arrested for having an altercation with Helmbacher, during which Taylor threatened to kill Helmbacher. *Id.* at 68-69. Police also knew Taylor had another argument with Helmbacher a few days before the murder wherein Taylor allegedly had a gun. *Id.* Defendant Ryan admits that during his interrogation of Taylor, he may have accused Taylor of burglarizing Helmbacher's apartment and may have told Taylor that Taylor would be in trouble for the burglary and/or murder. *Id.* at 74. Taylor also had outstanding parole violations, and testified in

37

court that he was told his cooperation in testifying against Palmer would be taken into account. *Id*. at 96. Notably, after Taylor testified falsely against Plaintiff, Taylor's burglary charge was dismissed. *Id.* at 95-96.

Each of these facts creates a reasonable inference that Taylor had motive to lie when he made statements to the police and when he testified at trial. And given that Taylor was admonished at his deposition about the criminal implications of false testimony, *see* Ex. 24 (Taylor Dep.) at 6-8, it also creates an inference that he has a motive to continue telling that false story now. Under settled law Plaintiff must be permitted to expose Taylor's motive to lie and bias as part of his case. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *see also United States v. Salem*, 578 F.3d 682, 686-87 (7th Cir. 2009) ("Proof of bias or motive to lie is admissible impeachment evidence.") (citation omitted); *United States v. Manske,* 186 F.3d 770, 777 (7th Cir.1999) ("[Proof of bias] is the quintessentially appropriate topic for cross-examination."); *Harris v. City of Chicago*, No. 14-CV-4391, 2017 WL 2462197, at *2 (N.D. Ill. June 7, 2017) ("Indeed, evidence showing a witness's bias or motive to lie is relevant and generally permissible material for cross examination.").

Defendants' rote and conclusory reliance on Rule 403 should be rejected because it does not apply for the reasons Plaintiff has repeatedly articulated, and because it is undeveloped. *Otto*,

38

134 F.3d at 854; *Tyler*, 70 F.3d at 464; *Berkowitz*, 927 F.2d at 1384; *Radke's Inc.*, No. 09-01258, 2011 WL 811377, at *1.

Because the dismissal of Taylor's burglary charge is relevant to showing Taylor's bias, self-interest, and motive to lie, Defendants' motion should be denied.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 9**

Defendants' Motion *in Limine* No. 9 asks the Court to exclude evidence of the criminal jury's deliberations at Plaintiff's criminal trial. Dkt. 292 at 13. Plaintiff agrees that the particular deliberations and thinking of the criminal jury in Plaintiff's criminal proceedings should not be admitted in the civil case.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* NO. 10**

Plaintiff respectfully requests that this Court deny Defendants' motion to bar evidence

showing that Defendants refused to agree to submit DNA profiles to CODIS. Dkt. 292 at 14-16.

**Introduction**

After Plaintiff was exonerated, he sought to obtain evidence that would further prove his

innocence—the identity of the person(s) who handled the weapon used to murder William

Helmbacher. Plaintiff learned that the murder weapon, a hammer, had viable DNA evidence on it

that could be submitted to the CODIS database to identify a potential match. When Defendants

were informed of this evidence, Defendants refused to agree to have the DNA evidence

submitted, ultimately thwarting Plaintiff's effort to obtain critical evidence of innocence.

Defendants are law enforcement officers. They had the power to agree to the testing. But

they chose instead to prevent it, all the while continuing to assert that Plaintiff is guilty of murder

and that there is insufficient evidence demonstrating his innocence.

Having refused to agree to conduct the testing, Defendants cannot also hope to exclude

from the trial the fact that they took this action. They can certainly defend or explain why they

did what they did (and their motion offers some speculation about how the testing might not have

been conclusive), but their actions in opposing the testing are relevant, and should be part of the

jury's consideration. If the jury accepts Defendants' explanation that their actions in

circumventing the testing were justified or benign, then the evidence will not hurt them. But it

would hardly be unreasonable for the jury to choose to draw a different inference, particularly

given the fact that one definitely would have expected that the Defendants' search for the truth

would include an interest in learning the identity of the person to whom this DNA belonged.

Where there was nothing to lose in conducting the testing, but everything to gain in terms of the

41

very real possibility of identifying the actual perpetrator, Defendants' refusal to agree to testing is a fact that they should have to justify.

**Factual Background**

On August 27, 1998, William Helmbacher was killed due to brain trauma caused by "blows to the head delivered by the use of hammer." Ex. 28 (Coroner's Report) at 3. The hammer was recovered from the crime scene, examined by the coroner, and logged into evidence. *Id.*; Ex. 11 (Ryan's Follow Up Report, Aug. 28, 1998); Ex. 33 (Ryan's Follow Up Report, Aug. 28, 1998). Defendants chose not to test the hammer for DNA. Ex. 29 (ISP Laboratory Worksheet).

In May 2000, Plaintiff was wrongfully convicted of murdering Helmbacher. Dkt. 165 at 95, ¶ 315. The only evidence against Plaintiff was Ray Taylor's false testimony and the victim's blood on Plaintiff's shoes. *Id.* at 94, ¶¶ 307-312. This blood was planted by Defendants to secure Plaintiff's wrongful conviction. After almost two decades in prison, Plaintiff was exonerated when the DNA found under the victim's fingernails excluded Plaintiff as a contributor. Ex. 30 (ISP DNA Test Results). Following Plaintiff's exoneration, Plaintiff petitioned for and received a certificate of innocence in 2021. Ex. 31 (Court Order).

Despite the compelling evidence of Plaintiff's innocence, Defendants continue to contend that Plaintiff committed Helmbacher's murder. Plaintiff expects that Defendants will center the issue of Plaintiff's culpability in order to argue that Defendants did not fabricate evidence, and that Plaintiff was not wrongfully convicted and thus, is not entitled to any damages.[6] During the

---

[6] At various times, Defendants have claimed that they do not intend to argue that Plaintiff was guilty of Helmbacher's murder, but their own motions *in limine* belie this claim. *See e.g.* Dkt. 292 at 10 (describing one of the issues and their defense as: "If police planted the blood in Plaintiff's shoe, there is no question Plaintiff's rights were violated…. If the blood was not

civil discovery phase, a forensics lab called Forensic Analytical Crime Lab found non-blood DNA on the handle of the murder weapon. Ex. 32 (STRmix Probabilistic Genotype Chart). To carry his burden and to rebut Defendants' anticipated arguments, Plaintiff requested that Forensic Analytical submit the non-blood DNA to the CODIS database to see if they could identify a match. Before this process could begin, Forensic Analytical needed Decatur Police Department to identify a point person who the CODIS administrator could contact if there was a hit in the database. Defendants objected to providing this information. Dkt. 136-1 at 1.

Not wanting to be deprived of an opportunity to find the true perpetrator of Helmbacher's murder, Plaintiff filed a motion to compel a CODIS search, and Defendants filed a response opposing Plaintiff's effort. Dkt. 136 (Plaintiff's Motion to Compel CODIS Search); Dkt. 139. (Defendants' Response in Opposition). After multiple rounds of pleadings were filed, the court denied Plaintiff's motion. Dkt. 146.

## Argument

Defendants seek to bar Plaintiff from admitting evidence showing that Defendants obstructed Plaintiff's attempts to identify the person(s) who handled the murder weapon, but offer no legal basis that would render such evidence inadmissible. The motion should be denied.

At trial, Plaintiff has the burden of proof, and Defendants are expected to argue at every turn that there is insufficient evidence demonstrating Plaintiff's innocence. That alone makes this evidence relevant. *See Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999-1003 (7th Cir. 2012) (court cannot deprive plaintiff of evidence needed to rebut defenses). In short, Plaintiff should be able show the jury that (1) Defendants had the ability to find out whether a suspect could be

---

planted in Plaintiff's shoe, then the investigation *got the right offender*….") (emphasis added). Given this defense, evidence of Plaintiff's innocence is plainly relevant.

identified based on the DNA found on the hammer; (2) Defendants chose not to discover this information; and (3) Defendants prevented Plaintiff from even attempting to obtain evidence that would corroborate his assertion of innocence. This evidence is not only relevant to Plaintiff's claims, but also admissible under Federal Rule of Evidence 801(d)(2)(D) which permits the admission of a statement by a party opponent made by a person authorized to make a statement on the subject. Fed. R. Evid. 801(d)(2)(D); *see also United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990) (finding that an attorney may be the agent of his client under Rule 801(d)(2)(D)) (emphasis omitted).

Moreover, Defendants' disinterest in the testing to the point of opposing it is also probative of Defendants' continuing conspiracy to limit the discovery of evidence that would show that Defendants violated Plaintiff's constitutional rights during their investigation and throughout Plaintiff's trial, continuing even now when Plaintiff is fighting to vindicate those same rights. Defendants are permitted to rebut Plaintiff's argument and justify their actions at trial with the explanation set forth in their motion *in limine*, but there is no legal basis to which Defendants can point that would justify the exclusion of this evidence. The finder of fact is the proper arbiter of whether the Defendants' explanation for being against the testing is genuine or pretext.

Defendants want to prevent Plaintiff from arguing at trial that they do not want to know the truth about the crime scene DNA. For good reason. If the person who left DNA on the hammer could be identified and his or her guilt could be corroborated, then Defendants' insistence that Plaintiff committed the crime would be dead in the water.

But there is no good reason why the jury should not be informed that there was more that could have been done to identify the DNA, but the Defendants actively opposed it. Plaintiff is

not suggesting the Defendants should be barred from explaining that they opposed the DNA testing because it, according to them, probably would not have proved anything, or whatever other explanation Defendants want to offer for opposing this testing. But the jury should have all the facts. That Defendants have no straight-faced argument to a jury for why they opposed the testing only further shows how relevant that refusal truly is.

Nor does it change the analysis that the Court denied the motion to compel. The Court accepted Defendants' objection that it did not have authority to order the relief sought. As the Court noted in its opinion concerning Defendants' *Daubert* motions, Dkt. 287 at 37, the Court's ruling is not the issue. Defendants now point to the Court's reference to the criminal case as a basis to seek clarification on the Court's ruling, but it is a distinction without difference. The Court correctly opined that "[t]here is nothing in the court's ruling on the Motion to Compel that would bar Plaintiff from introducing the fact that the DNA evidence was not submitted by the Defendants to CODIS…." and aside from a cursory reference to FRE 402 and 403, Defendants still fail to cite any authority that would bar this evidence.

At the end of the day, the fact that Defendants objected at all is the relevant matter. This is particularly so where the Defendants, as employees of the law enforcement agency charged with solving this unsolved crime, had the ability to submit the profile for testing and would presumably be the ones insisting that the testing be performed. Their affirmative actions to block the testing are relevant, and should be barred.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION *IN LIMINE* NO. 11**

Defendants seek to prevent Plaintiff from arguing that the Decatur Police Department's

("DPD") policies were the cause of Plaintiff's wrongful conviction. Dkt. 292 at 16. Specifically,

Defendants claim that "any contention faulting the Decatur Polce Department's policies has no

relevance to any remaining claim and should be excluded under Federal Rules of Evidence 402

and 403." *Id.*

Defendants' motion presents a limited request to prevent Plaintiff from attributing

Plaintiff's wrongful conviction to DPD's policies. *See* Dkt. 292 at 16 ("[A]ny contention faulting

Decatur Police Department's policies has no relevance to any remaining claims and should be

excluded under FRE 402 and 403."). In light of this Court's ruling on Defendants' motion for

summary judgment, Dkt. 210 at 106-108, Plaintiff does not oppose Defendants' limited request

to bar arguments that DPD's policies caused Plaintiff's wrongful conviction.

To clarify: Defendants do not request that this Court bar any and all evidence referencing

DPD's policy. Nor could they. Plaintiff is entitled to introduce evidence of DPD's policies to

demonstrate Defendants' deviation from those policies. Such deviations can be used to prove

Defendants' intent to violate Plaintiff's rights, and elements related to Plaintiff's malicious

prosecution and intentional infliction of emotional distress claims. *See Jimenez v. City of*

*Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("Expert testimony regarding relevant professional

standards can give a jury a baseline to evaluate whether a defendant's deviations from the

standard were merely negligent or were so severe or persistent as to support an inference of

intentional or reckless conduct that violated a plaintiff's constitutional rights."); *Vazquez v. City*

*of New York*, No. 10-CV-6277 JMF, 2014 WL 4388497, at *9 (S.D.N.Y. Sept. 5, 2014)

(deviation from police practices was relevant to prove that the police officer defendants acted

with malice). Plaintiff will not, however, fault the policies themselves for Plaintiff's wrongful

conviction.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 12**

Defendants' Motion *in Limine* No. 12 asks the Court to exclude evidence that Decatur or

its insurers are obligated to indemnify a judgment against the individual Defendants, including

Carlton's Estate. Dkt. 292 at 16-17. As Plaintiff set out in his own Motion *in Limine* No. 9,

evidence of indemnification should be excluded so long as Defendants do not reference their

financial inability to pay a judgment. *See* Dkt. 294 at 31-32. If the individual Defendants give the

jury the impression that they are responsible for payment of a judgment, then the jury should

learn of Decatur's and its insurers' obligation to indemnify. *Id.* That said, Plaintiff agrees that

there is nothing the jury need decide to resolve Plaintiff's indemnification claim, which the Court

has noted is still in the case. Dkt. 210 at 114. If a judgment is entered against the individual

Defendants, including Carlton's Estate, all parties agree that Decatur and its insurers will be

obligated to pay that judgment.

Respectfully submitted,

/s/ Rachel Brady
*One of Plaintiff's Attorneys*

Jon Loevy
Steven Art
Rachel Brady
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900
brady@loevy.com

48

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel Brady, hereby certify that on January 31, 2025, I filed the foregoing motion

using the Court's CM/ECF system, which effected service on all counsel of record.

<u>/s/ Rachel Brady</u>
*One of Plaintiff's Attorneys*